CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 04-1314           DOCKET           DIVISION C

**LOYOLA UNIVERSITY NEW ORLEANS**

versus

**MAPP CONSTRUCTION, INC., TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY, EINHORN YAFFEE PRESCOTT, ARCHITECTURE AND PLANNING, P.C., and ESKEW + A PROFESSIONAL CORPORATION**

FILED: _____     _____
                                    DEPUTY CLERK

## PETITION FOR BREACH OF CONTRACT, NEGLIGENCE, BREACH OF WARRANTY, CONTRACTUAL INDEMNITY AND DEMAND FOR TRIAL BY JURY

**PARTIES**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, **Loyola University New Orleans ("Loyola")**, a Louisiana non-profit corporation domiciled in the Parish of Orleans, State of Louisiana, who respectfully represents as follows:

1.

Made Defendants in this action are:

A. **MAPP Construction, Inc. ("MAPP")**, a Louisiana corporation domiciled in the Parish of East Baton Rouge, State of Louisiana, who, on October 1, 2003, was merged into Mapp Construction, L.L.C., a Louisiana Limited Liability Company who is also domiciled in the Parish of East Baton Rouge, State of Louisiana;

B. **Travelers Property & Casualty Insurance Company ("Travelers")**, a foreign insurer licenced to do and doing business in the State of Louisiana;

1

C.  **Einhorn Yaffee Prescott, Architecture & Engineering, P.C. ("EYP")**, who, on information and belief, is a New York corporation with its principal place of business in Washington, D.C., and who is licensed to practice architecture and engineering in the State of Louisiana; and

D.  **Eskew + A Professional Corporation ("Eskew")**, a Louisiana professional corporation domiciled in the Parish of Orleans, State of Louisiana, who, on June 5, 2002, changed its name to Eskew + Dumez + Ripple, A Professional Corporation, and whose principals are licensed to practice architecture in the State of Louisiana.

## VENUE

### 2.

Venue is proper in Orleans Parish pursuant to the following articles of the Louisiana Code of Civil Procedure:

A.  Article 74, because the wrongful conduct complained of occurred in Orleans Parish and because the damages complained of were sustained in Orleans Parish;

B.  Article 76.1, because the work pursuant to the Construction Contract and some of the services pursuant to the Architectural Contract were performed in Orleans Parish; and

C.  Article 42, because Defendant, Eskew, is domiciled in Orleans Parish; and

D.  R.S. 13:3202, as to EYP, because Loyola is domiciled in Orleans Parish.

## FACTUAL BACKGROUND

**3.**

Loyola is the owner of property located in New Orleans, Louisiana, at the municipal address 6363 St. Charles Avenue, which property is commonly known as Loyola University ("Loyola Campus").

**4.**

On our about April 15, 1997, Loyola entered into a written contract with EYP ("Architectural Contract") for architectural services for or in connection with the design and erection of a New Residence Hall on the Loyola Campus ("New Residence Hall" or "Project" or "Building").

**5.**

EYP designed the Project and prepared plans and specifications for the New Residence Hall. EYP's plans and specifications for the Project are dated October 31, 1997.

**6.**

The New Residence Hall is seven stories tall and contains housing for 328 of Loyola's students.

**7.**

Pursuant to the Architectural Contract, EYP agreed to fully defend, indemnify and hold harmless Loyola against any and all losses, claims, suits, liability and expenses arising out of damage to property caused by, arising out of, or resulting from the negligent acts, errors or omissions of the Architect. See Paragraph 10.3 of Architectural Contract. Said indemnity provision gives Loyola the right to select the attorney who will represent it and obligates EYP to pay all attorney's fees, costs and expenses of such attorney.

**8.**

On information and belief, EYP entered into a contract with Eskew wherein Eskew agreed to perform some portions of the architectural services required of EYP pursuant to the Architectural Contract.

3

**9.**

Eskew performed architectural services on the Project, which services included, but may not have been limited to, contract administration services and periodic observation during the construction of the Project. The extent of Eskew's architectural services on the Project were, on information and belief, defined and set forth in the contract between EYP and Eskew. Loyola is a third-party beneficiary to the contract between EYP and Eskew.

**10.**

On January 15, 1998, Loyola entered into a written contract with MAPP ("Construction Contract") for construction of the Project. Pursuant to the Construction Contract, the initial total cost of all materials, labor, subcontracts, fees and overhead was $10,563,577. The contract amount was modified by change order during the course of the construction of the Project.

**11.**

The Construction Contract required Mapp to provide a performance bond assuring faithful and timely performance of the construction of the Project ("Performance Bond").

**12.**

Pursuant to the foregoing requirement of the Construction Contract, Travelers issued Performance Bond No. 087 SB 101150344 BCM in the full amount of the Construction Contract. Said bond identifies MAPP as the Principal under the bond and Loyola as the obligee under the bond.

**13.**

Pursuant to the Construction Contract and to the Performance Bond, MAPP and Travelers each agreed to fully indemnify, defend and hold harmless Loyola and EYP from all costs and damages, including attorney's fees, for or on account of any losses or damages sustained by any person or property on account of, arising out of, in connection with, or incidental to MAPP's work on the Project, or due to any neglect, act, or fault of MAPP, its subcontractors, materials suppliers, employees, and third parties in the execution of the Construction Contract. See last paragraph of Article 9 of the Construction Contract.

**14.**

A Certificate of Substantial Completion for the Project was executed on or about September 19, 2000. Said certificate established July 16, 1999, as the date of substantial completion of the Project.

**15.**

Within a few months of the date of Substantial Completion of the Project, Loyola began to notice within the Building mold, mildew, damage to interior finishes, high relative humidities and other indications of water intrusion, which problems continue to the present and were caused by the defective design, construction, workmanship and/or installation of the Building and/or its components by Defendants, including, but not limited to, the following:

A. Defective design, construction, workmanship, and/or installation of the roofing system;

B. Defective design, construction, workmanship, and/or installation of the roof flashing systems;

C. Defective design, manufacture, construction, workmanship, and/or installation of the windows;

D. Defective design, construction, workmanship, and/or installation of sill, jamb and head flashings at windows;

E. Defective design, construction, workmanship, and/or installation of the HVAC system including, but not limited to, chilled water piping and insulation of chilled water piping;

F. Defective design, manufacture, construction, workmanship, and/or installation of the wall insulation;

G. Defective design, manufacture, construction, workmanship, and/or installation of the vapor barriers and/or moisture barriers;

H. Defective design, construction, workmanship, and/or installation of the masonry work;

I. Defective design, construction, workmanship, and/or installation of through wall flashing systems within the exterior walls;

J. Defective design, manufacture, workmanship, and/or installation of sealant systems used to seal around openings and penetrations in the roof and exterior walls;

K. Defective design, construction, workmanship, and/or installation of the exterior wall systems, including, but not limited to, selection of component parts of the exterior wall assemblies and failure to properly seal joints and gaps in the exterior gypsum sheathing;

L. Defective design, construction, workmanship, and/or installation of gypsum sheathing wallboard as the interior finish of exterior walls;

M. Defective design, construction, workmanship, and/or installation of expansion and control joints in exterior masonry walls and/or the sealants placed into said joints; and

N. Any and all other defects in design, manufacture, construction, workmanship, and/or installation to be shown at the trial of this matter.

**16.**

The defective design, construction, workmanship, and/or installation of the Building did not take into account what should be appropriate design parameters and/or building practices for the Building and improvements, which are located in New Orleans and thus are regularly exposed to wet conditions and a routinely humid climate.

**17.**

Upon discovery of the water intrusion and high relative humidities in the Building, and/or of the defects listed in the foregoing paragraphs, Loyola notified both MAPP and EYP.

**18.**

MAPP, EYP, Eskew, and Loyola ("the Team") began investigation of the water intrusion problems and high relative humidity within the Building. On information and belief,

the Team discovered some of the causes of some of the water intrusion problems in some portions of the Building, and they also discovered, or at least opined of, some of the possible causes of the high relative humidity readings within the Building.

**19.**

In varying degrees of involvement, MAPP, EYP, Eskew, and Loyola have continued their attempts to determine the sources and causes of the water intrusion problems into, and the high relative humidity problems within, the Building, and those attempts are still ongoing.

**20.**

MAPP undertook performance of remedial work in some portions of the Building to correct some of the water intrusion problems and high humidity problems, and also to repair the damages caused by said water intrusion and high humidity problems.

**21.**

The Team has been marginally successful in determining some of the causes of some of the water intrusion and high humidity problems in different sections of the Building, but the problems persist and no one has yet been able to identify or correct all of the causes of the water intrusion and high humidity problems in the Building, nor have all of the damages caused by said water intrusion and high humidity problems been repaired.

**22.**

To date, Loyola has spent almost $130,000 in its efforts to mitigate damages caused by defective design and/or construction of the Project, which efforts and expenditures have been largely unsuccessful due to the widespread locations and degrees of the defective designs and/or constructions. Loyola is entitled to and hereby demands reimbursement from defendants of all sums it has spent, or will spend, in connection with the correction of problems caused by design and/or construction defects.

**23.**

As recently as January 7, 2004, representatives of MAPP, EYP, and Loyola collectively inspected the Building and saw numerous indications of continuing water intrusion and high relative humidity problems within the building. During the same inspection, which was held on the roof, around the exterior walls, including upper levels of the walls that could be assessed, and inside of the building, it was clear that much of the defective work which has been causing the water intrusion and high relative humidity readings within the Building has not been fully and properly corrected.

**24.**

As of the date of the filing of this Petition, neither Loyola, nor anyone else, knows the true extent of the multiple causes of the damages to Loyola's New Residence Hall, nor does Loyola or anyone else know what steps must be taken to fully investigate all problems affecting the building and/or the damages caused by those problems. As such, Loyola still has a leaky, damp building which continues to be damaged by Defendants' defective design and/or construction.

**25.**

Some of the student occupants of the New Residence Hall, from time to time, have complained to Loyola of symptoms and/or illness which, on information and belief, are caused by exposure to mold and mildew in or near their respective rooms. Loyola has always investigated the conditions around said students' rooms, made appropriate repairs, and in some cases, relocated students to other rooms, all of which has been done at Loyola's expense.

**26.**

Loyola has held off on taking legal action previously because it believed and relied on the promises made by MAPP, EYP, and Eskew that the design and/or construction defects affecting the Building would be investigated, identified and corrected.

## COUNT 1

## BREACH OF CONTRACT

**27.**

All of the allegations contained in Paragraphs 1 through 26 are incorporated herein as if set forth *in extenso*.

**28.**

Loyola contracted with EYP for professional services related to design and construction of the New Residence Hall.

**29.**

EYP, in turn, contracted with Eskew for some portion of the professional services for which EYP was obligated to provide pursuant to the Architectural Contract. As such, Loyola is a third party beneficiary to the contract between EYP and Eskew.

**30.**

EYP breached its contract with Loyola to design the New Residence Hall, which breaches included, without limitation, the following:

- A. Preparing defective architectural and/or engineering drawings, plans, and specifications for the Project;
- B. Failing to provided adequate and sufficient construction administration and observation of the construction of the Project;
- C. Failing to protect against and prevent leaks and/or excessive moisture accumulation within the components and interior spaces of the Building;
- D. Failing to provide an HVAC system that would positively pressurize the interior of the entire Building, thus resulting in accumulation of excessive relative humidity within the Building; and
- E. Any and all damages resulting from the breaches of contract, including, but not limited to, water intrusion, high relative humidities, mold and mildew, costs of remediation of damages, diminution of value of the Building, and all costs

and expenses associated with relocation of students to other living quarters while the remedial work is being performed.

### 31.

Eskew breached its contract with EYP, and thus its third party beneficiary contractual relationship with Loyola, with respect to the New Residence Hall, which breaches included, without limitation, the following:

A.  Failing to provided adequate and sufficient construction administration and observation of the construction of the Project;

B..  Failing to protect against and prevent leaks and/or excessive moisture accumulation within the components and interior spaces of the Building;

C.  Failing to provide an HVAC system that would positively pressurize the interior of the entire Building, thus resulting in accumulation of excessive relative humidify within the Building; and

D  Any and all damages resulting from the breaches of contract, including, but not limited to, water intrusion, high relative humidities, mold and mildew, costs of remediation of damages, diminution of value of the Building, and all costs and expenses associated with relocation of students to other living quarters while the remedial work is being performed.

### 32.

MAPP breached it contract with Loyola by failing to complete construction of the New Residence Hall in conformity with the contract documents and failing to follow generally accepted construction practices for the New Orleans metropolitan area, specifically including, but not limited to, prevention against and protection from water intrusion into and/or high relative humidity levels within the Building. MAPP further breached its contract by allowing damages to the Building itself, and damages arising out of diminution of value of the Building and out of the costs and expenses associated with relocation of student occupants to other living quarters while the remedial work is being performed.

**33.**

Loyola fulfilled its obligations under each respective contract with EYP, Eskew and MAPP.

**34.**

Therefore, EYP and MAPP have materially breached their respective contracts with Loyola, and Eskew has materially breached its contract with EYP and its third party beneficiary relationship with Loyola, and all are liable to Loyola for all damages resulting from the breaches, legal interest from the date of default, reasonable attorney's fees, and the costs of these proceedings.

## COUNT 2

### NEGLIGENCE

**35.**

All of the allegations contained in Paragraphs 1 through 34 are incorporated herein as if set forth *in extenso*.

**36.**

EYP was negligent and caused damage to Loyola in the following non-exclusive respects: by negligent preparation of architectural and/or engineering drawings, plans, specifications, and contract documents, and for negligence in the construction administration and periodic observation during construction of Loyola's New Residence Hall.

**37.**

Eskew was negligent and caused damage to Loyola in the following non-exclusive respects: by negligence in the construction administration and periodic observation during construction of Loyola's New Residence Hall.

**38.**

MAPP and/or its subcontractors were negligent and caused damaged to Loyola in the following non-exclusive respects: by failure to follow generally accepted construction

practices, means, or methods in constructing and/or installing components of Loyola's New Residence Hall.

### 39.

Defendants are therefore liable for all damages resulting from their respective negligence, legal interest from the date of judicial demand, and reasonable costs of these proceedings.

## COUNT 3

## **BREACH OF WARRANTY**

### 40.

All of the allegations contained in Paragraphs 1 through 39 are incorporated herein as if set forth *in extenso*.

### 41.

MAPP, EYP, and Eskew breached their respective warranties of workmanlike performance and caused damages to Loyola in their preparation of architectural and engineering drawings, plans, specifications and contract documents, for administration and periodic observation of construction, and for failure to follow generally accepted construction practices, means, or methods in constructing Loyola's New Residence Hall.

### 42.

Defendants are therefore liable for repair costs and damages resulting from their respective breaches of warranty, legal interest from the date of judicial demand, and reasonable costs of these proceedings.

## COUNT 4

## **DEMAND FOR CONTRACTUAL INDEMNITY**

### 43.

All of the allegations contained in Paragraphs 1 through 42 are incorporated herein as if set forth *in extenso*.

**44.**

Loyola is entitled to and demands contractual indemnity from EYP pursuant to Paragraph 10.3 of the Architectural Contract.

**45.**

Loyola is entitled to and demands contractual indemnity from MAPP pursuant to the last paragraph of Article 9 of the Construction Contract,

**46.**

Loyola is entitled to and demands contractual indemnity from Travelers pursuant to the last paragraph of Article 9 of the Construction Contract and pursuant to the Performance Bond issued by Travelers to MAPP on the Project.

**DEMAND FOR TRIAL BY JURY**

**47.**

Loyola prays for trial by jury of all issues so triable.

WHEREFORE, Plaintiff, Loyola University New Orleans, prays that the Defendants be served with a certified copy of this petition and duly cited to appear and answer this petition within the delays allowed by law, and that after due proceedings are had, that there be judgment in favor of Loyola and against defendants jointly, severally, and *in solido* for their respective percentages of damages arising out of, but not limited to, the following:

A. **COUNT 1**: Against EYP, Eskew, MAPP and its surety, Travelers, for any and all damages resulting from their respective breaches of contract, legal interest from the date of default, reasonable attorney's fees, and costs of these proceedings;

B. **COUNT 2**: Against EYP, Eskew, MAPP and its surety, Travelers, for any and all damages resulting from their respective negligence, legal interest from the date of judicial demand, and the costs of these proceedings;

C. **COUNT 3:** Against EYP, Eskew, MAPP and its surety, Travelers, for any and all damages occasioned by their respective breaches of warranty, legal interest from the date of judicial demand, and the costs of these proceedings;

D. **COUNT 4:** Against EYP, MAPP, and Travelers for contractual indemnity, including attorney's fees, and all costs and expenses associated with the prosecution of this lawsuit;

E. For such other legal and equitable relief as this Honorable Court shall deem necessary and proper; and

F. For trial by jury of all issues so triable.

Respectfully submitted;

INABNET LAW FIRM, L.L.C.

J. Ashley Inabnet, T.A. (#21636)
Richard J. Garvey, Jr.   (#20822)
800 Jackson Avenue, Suite A
Mandeville, LA  70448
Telephone: (985) 624-9920
Facsimile:   (985) 624-9940

**Attorneys for Plaintiff:
Loyola University New Orleans**

**Please Serve:**

**Einhorn Yaffee Prescott,
Architecture and Engineering, P.C.**
Through the Louisiana Long Arm Statute
at its principal place of business
1000 Potomac Street, NW
Washington, D.C. 20007-3298

**SERVICES CONTINUED ON NEXT PAGE**

14



**Eskew + A Professional Corporation**
a/k/a Eskew + Dumez + Ripple, A Professional Corporation
Through its Registered Agent for Service of Process
R. Allen Eskew
365 Canal Street, Suite 3150
New Orleans, Louisiana 70130

**MAPP Construction, Inc.**
a/k/a MAPP Construction, L.L.C.
Through its Registered Agent for Service of Process
R. Gray Sexton
6513 Perkins Road
Baton Rouge, Louisiana 70808

**Travelers Property & Casualty Insurance Company**
Through the Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809